FILED
2009 Jul-09 PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CARLEE WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | |
| **PHILLIPS & COHEN** | ) | **CV-08-PWG-2383-S** |
| **ASSOCIATES, LTD., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANT PHILLIPS & COHEN ASSOCIATES, LTD.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
_____

Respectfully submitted,

*s/Laura C. Nettles*
Laura C. Nettles (ASB-5805-S63L)
Dustin J. Kittle (ASB-8250-T68K)
Attorneys for Defendant,
Phillips & Cohen Associates, Ltd.

**OF COUNSEL:**

**LLOYD, GRAY & WHITEHEAD, P.C.**
2501 20th Place South, Suite 300
Birmingham, Alabama 35223
(205) 967-2380 – Telephone
(205) 967-2380 – Facsimile

**COMES NOW,** Defendant Phillips & Cohen Associates, Ltd., ("Phillips & Cohen"), by and through its attorneys, and moves this Honorable Court pursuant to Rule 56 of the <u>Federal Rules of Civil Procedure</u> to enter summary judgment in its favor dismissing all of Plaintiff's claims on the grounds there are no genuine issues of material fact and Phillips & Cohen is entitled to a judgment as a matter of law. In support of its Motion, Phillips & Cohen states as follows:

<u>**INTRODUCTION**</u>

Plaintiff Carlee Walker ("Ms. Walker") filed this lawsuit on December 22, 2008 alleging claims against Phillips & Cohen for violation of the Fair Debt Collection Practices Act ("FDCPA") and state law tort claims of invasion of privacy and negligent, reckless, and wanton training and supervision. (See Complaint, attached hereto as Exhibit A, Counts One, Two, Three, and Four).[1] The lawsuit involves a **<u>single, five (5) minute telephone call</u>** between Plaintiff and Phillips & Cohen which occurred on November 17, 2008. As an audio recording of the telephone call was retained, the facts involved in this case are not in dispute.

Plaintiff's lawsuit and the subject telephone call arise from Phillips & Cohen's assignment to collect a debt incurred by Plaintiff's son. The issues presented in Phillips & Cohen's Motion for Summary Judgment are straightforward: 1) Plaintiff has admitted she has no evidence the subject debt was

---

[1] All Exhibits referenced herein are attached to Phillips & Cohen's Evidentiary Submission.

1

incurred for personal, family, or household purposes, as required to sustain a claim under the FDCPA; 2) the single telephone call at issue does not approach those limited circumstances in which courts have found an invasion of privacy under Alabama law; and 3) to the extent Plaintiff's invasion of privacy claim is due to be dismissed, Plaintiff cannot sustain a claim for improper training and supervision in the absence of an underlying tort.  Given the undisputed evidence, Plaintiff's FDCPA and state law claims are due to be dismissed as a matter of law.

## I.    MOVANT'S STATEMENT OF UNDISPUTED FACTS

1.    Ms. Walker is a sixty-nine year old woman who has resided at 2026 East Lake Boulevard, Birmingham, Alabama since 1993.   (See Deposition Transcript of Carlee Walker, attached hereto as Exhibit B, p. 18).

2.    In approximately 2001, Ms. Walker's adult son Matthew Knighten ("Mr. Knighten") moved in with her at 2026 East Lake Boulevard.  (Exhibit B, p. 22).

3.    During the period Mr. Knighten resided at 2026 East Lake Boulevard, Ms. Walker became aware that her son had accumulated some debts.  (Exhibit B, p. 107).

4.    Ms. Walker and Mr. Knighten maintained a joint account from which Ms. Walker paid Mr. Knighten's debts.  (Exhibit B, p. 108).

5.    Ms. Walker testified the debts were paid "mostly" with Mr. Knighten's funds.  (Exhibit B, p. 110).

6.    Ms. Walker testified her son had incurred some of his debts by "going to a certain strip club and [] throwing a lot of money at the stripper."  (Exhibit B, p. 148).

7.    According to Ms. Walker, Mr. Knigthen's credit card bills would occasionally have "a rather large expenditure for one night."  (Exhibit B, p. 148).

8.    When Ms. Walker confronted Mr. Knighten regarding the expenditures, Mr. Knighten informed Ms. Walker "he was buying champagne … for the girls."  (Exhibit B, p. 148).

9.    Mr. Knighten, who worked as a mechanic, lost his job with Parkway Tires in March, 2008.  (Exhibit B, pp. 43-44).

10.    After losing his job, Mr. Knighten worked independently as a mechanic at 2026 East Lake Boulevard.  (Exhibit B, pp. 43-44).

11.    Ms. Walker testified at some point Mr. Knighten began to get involved with drugs.  (Exhibit B, pp. 106-07; 150-51).

12.    Mr. Knighten committed suicide on June 21, 2008.  (Exhibit B, p. 42).

13.    "Within a month or so" after his death, Ms. Walker testified she began to receive telephone calls regarding the debts owed by Mr. Knighten.  (Exhibit B, pp. 105, 113-14).

14.     Ms. Walker testified she understood Mr. Knighten's estate would be responsible for paying any debts owed by Mr. Knighten.  (Exhibit B, pp. 123-25).

15.     Ms. Walker conceded a collection agency had a right to call and determine whether Mr. Knighten had any assets which would be subject to his debts.  (Exhibit B, pp. 125-26).

16.     Ms. Walker believes DCM Services ("DCM") was the first company which contacted her regarding the debts owed by Mr. Knighten.  (Exhibit B, p. 112).

17.     Ms. Walker testified DCM contacted her regarding four (4) separate debts owed by Mr. Knighten.  (Exhibit B, p. 112).

18.     Ms. Walker filed a lawsuit against DCM in this Court on November 18, 2008.  (Exhibit B, p. 157).

19.     Although Ms. Walker alleged in her complaint that DCM had contacted her 45-50 times in September, 2008 and October, 2008, Ms. Walker admitted in her deposition that DCM actually only contacted her on twelve (12) occasions.  (Exhibit B, pp. 157-60).

20.     Phillips & Cohen, the Defendant in this action, was another company which was retained to collect a debt owed by Mr. Knighten.  (Exhibit A, ¶ 8).

21.     Phillips & Cohen was retained to collect a specific debt owed by Mr. Knighten to HSBC Bank.  (Exhibit A, ¶¶ 8-9).

22.     In her deposition, Ms. Walker admitted she does not know how Mr. Knighten expended the funds which created the debt owed to HSBC Bank. (Exhibit B, p. 150).

23.     As Mr. Knighten was operating an independent mechanic business, Ms. Walker testified it was possible Mr. Knighten expended the funds from HSBC Bank to purchase something related to a car he was repairing.  (Exhibit B, p. 149).

24.     Ms. Walker also testified Mr. Knighten "could have been using [the funds from HSBC Bank] for crack."  (Exhibit B, p. 151).

25.     On November 17, 2008, the same day Ms. Walker filed her lawsuit against DCM, Phillips & Cohen's collector Char'reece Hackett ("Ms. Hackett") contacted Ms. Walker by telephone regarding the debt owed to HSBC Bank. (Exhibit A, ¶ 9).

26.     Ms. Hackett contacted Ms. Walker to determine who was handling the final affairs for Mr. Knighten and to determine whether Mr. Knighten had any assets subject to the debt.  (Exhibit B, pp. 184-86).

27.     Ms. Hackett's telephone call to Ms. Walker lasted a total of five (5) minutes.   (Audio Recording of November 17, 2008 Telephone Call, attached hereto as Exhibit C).[2]

---

[2] Phillips & Cohen produces a copy of the audio recording to confirm the accuracy of the representations regarding the November 17, 2008 telephone call.  Phillips & Cohen also

28.    In her deposition, Ms. Walker admitted Ms. Hackett never cursed her nor called her names during the telephone call.  (Exhibit B, p. 130).

29.    However, Ms. Walker testified Ms. Hackett informed her during the call that she was responsible for paying Mr. Knighten's debt, she should pay the debt owed by Mr. Knighten, and Phillips & Cohen was going to take her house away if the debt was not paid.  (Exhibit B, pp. 141, 146, 173).

30.    Ms. Walker testified the alleged threats were particularly upsetting because Ms. Hackett informed her that she worked for a law firm.  (Exhibit B, pp. 171-72).

31.    To be clear, Ms. Hackett never informed Ms. Walker that she worked for a law firm.  (Exhibit B, pp. 184-90; Exhibit C).

32.    At the outset of the telephone call, Ms. Hackett specifically informed Ms. Walker she was calling on behalf of Phillips & Cohen.  (Exhibit B, pp. 184-90; Exhibit C).

33.    During the telephone call, Ms. Hackett neither advised Ms. Walker she was responsible for paying Mr. Knighten's debt nor stated to Ms. Walker that she should pay Mr. Knighten's debt.  (Exhibit B, pp. 184-90; Exhibit C).

---

produces the audio recording to allow this Court to observe the voice inflection and tone used by Ms. Walker and Ms. Hackett during the telephone call.

34.    In fact, Ms. Hackett specifically informed Ms. Walker she was "not legally responsible" for the debt owed by Mr. Knighten.  (Exhibit B, p. 189; Exhibit C).

35.    Ms. Hackett also did not threaten Ms. Walker that Phillips & Cohen was going to take away her house if the debt was not paid.  (Exhibit B, pp. 184-90; Exhibit C).

36.    Ms. Hackett indicated to Ms. Walker that Mr. Knighten's name remained on the deed to the property and that fifty percent (50%) of any of Mr. Knighten's assets was probatable under Alabama law.  (Exhibit B, pp. 186-87; Exhibit C).

37.    Ms. Walker admitted in her deposition that Mr. Knighten's name remained on the deed to the property at the time of the November 17, 2008 telephone call.  (Exhibit B, p. 182).

38.    Ms. Walker testified the deed to property was a joint tenancy with a right of survivorship.  (Exhibit B, pp. 182-83).

39.    Ms. Walker was asked in her deposition and could not provide evidence that Ms. Hackett was aware the deed was a joint tenancy with a right of survivorship at the time of the November 17, 2008 telephone call.  (Exhibit B, pp. 182-83).

40.     Ms. Walker testified she knew before the November 17, 2008 telephone call that her deed was supposed to be a joint tenancy with a right of survivorship and she understood what a joint right of survivorship meant. (Exhibit B, pp. 134-35).

41.     Lest there was any confusion, Ms. Walker immediately contacted the Probate Court after the November 17, 2008 telephone call to verify the deed was a joint tenancy with a right of survivorship and was told she "didn't have to worry about it." (Exhibit B, p. 136).

42.     The Probate Court also sent Ms. Walker a copy of the deed so she could confirm it was indeed a joint tenancy with a right of survivorship. (Exhibit B, p. 139).

43.     To validate the November 17, 2008 communication between Ms. Walker and Phillips & Cohen, a transcript of the audio recording is provided as follows:

|               |                                                                                |
| ------------- | ------------------------------------------------------------------------------ |
| Ms. Walker:   | Hello? Hello?                                                                   |
| Ms. Hackett:  | Hi.  I'm trying to reach the person who handled the final affairs for Matthew Knighten. |
| Ms. Walker:   | Hold on.  Are you talking to me?  Hello?                                        |
| Ms. Hackett:  | Hello?                                                                          |
| Ms. Walker:   | Just a minute.  Who is this?                                                    |
| Ms. Hackett:  | My name's Charreece Hackett from Phillips & Cohen Associates.                   |
| Ms. Walker:   | You're who?                                                                     |

8

| | |
|---|---|
| Ms. Hackett: | Charreece Hackett from Phillips & Cohen Associates. |
| Ms. Walker: | Spell your name if you don't mind. |
| Ms. Hackett: | Huh? |
| Ms. Walker: | Spell your name, please. |
| Ms. Hackett: | C-h-a-r-e-e-c-e. |
| Ms. Walker: | And your last name? |
| Ms. Hackett: | Hackett, H-a-c-k-e-t-t. |
| Ms. Walker: | Okay.  And you're with who? |
| Ms. Hackett: | Phillips & Cohen. |
| Ms. Walker: | And why are you calling me? |
| Ms. Hackett: | I'm just trying to reach the person who handled the final affairs for Matthew Knighten. |
| Ms. Walker: | Well, the only final affairs to handle was his -- his cremation.  He left no will and no estate. |
| Ms. Hackett: | Okay.  And are you Cathy? |
| Ms. Walker: | Cathy? |
| Ms. Hackett: | Are you Cathy? |
| Ms. Walker: | There's no Cathy. |
| Ms. Hackett: | Or Carlee, I'm sorry. |
| Ms. Walker: | I'm Carlee. |
| Ms. Hackett: | Okay, I'm sorry Carlee.  I was just trying to reach the person who handled the final affairs.  Basically, I was calling in reference to the HSBC.  He had a card through my client, HSBC, and we were trying to conduct a[n] estate and asset search to verify if there were any probatable assets, such as a home or a car or anything of that nature. |
| Ms. Walker: | There was not. |

| | |
|---|---|
| Ms. Hackett: | In Alabama, 50 percent of any property or any assets that he holds would be considered probatable. |
| Ms. Walker: | Ma'am, the home was mine. I put it in joint survivorship when we applied for a mortgage. |
| Ms. Hackett: | Ma'am, I understand. I just -- |
| Ms. Walker: | So when he died, it went right back to me. |
| Ms. Hackett: | All right. Ma'am I understand. I just have to advise you that the client, HSBC Bank, has retained us to conduct an estate and asset search. And we see – we've called the tax assessor and as far as they know, it still is in joint (unintelligible) in his name as well as yours. And basically, like I was saying, in Alabama, 50 percent of that asset is probatable. We just have to advise you of that. |
| Ms. Walker: | Not unless you want to pay a $71,000 mortgage. |
| Ms. Hackett: | Ma'am, I'm just advising you of the legal -- the law. In Alabama, 50 of the – the asset is probatable. I am just advising you of it. And basically, there has not -- |
| Ms. Walker: | Ma'am, a joint survivorship means -- when the person dies, it goes to the one that's left. That's me. |
| Ms. Hackett: | Right. Ma'am, I understand. As far as the law, it says the surviving spouse receives ownership, which is true. Now, without right of survivorship -- |
| Ms. Walker: | There is no surviving spouse, ma'am. There is no surviving spouse. |
| Ms. Hackett: | I thought you were the surviving spouse, ma'am. |
| Ms. Walker: | I'm his mother. |

| | |
|---|---|
| Ms. Hackett: | Well, you were just saying that you were -- |
| Ms. Walker: | I owned the house before he came up here to live with me. |
| Ms. Hackett: | Either way, ma'am, all I -- all I'm saying is 50 percent of it is probable. It's (unintelligible) his name and 50 percent of it is still probable. I do not want to argue with you. I'm just advising you of the law. |
| Ms. Walker: | The courthouse always sends the notices in my name only. |
| Ms. Hackett: | Okay, ma'am. I'm just advising you of the law. I do not want to argue. You're not -- legally responsible (unintelligible). I'm just advising you of the law. |
| Ms. Walker: | I am going to have my lawyer contact you. |
| Ms. Hackett: | I -- I can call him if you would like me to, and then we wouldn't have to contact you anymore. |
| Ms. Walker: | His name is Whitney Seals. |
| Ms. Hackett: | Whitney Seals? |
| Ms. Walker: | Whitney Seals with Lindsey Law Firm. |
| Ms. Hackett: | Okay. Can I have his number or her number? |
| Ms. Walker: | It's a man. It's [TELEPHONE NUMBER REDACTED]. |
| Ms. Hackett: | Okay. I'll go ahead and give him a call. Then if he's not handling the estate, I will have to contact you again. I will only need to speak to the attorney who's handling the estate matter. |
| Ms. Walker: | There's no estate. |
| Ms. Hackett: | Well, if he's not handling the estate, then there is no need for me to contact him. |
| Ms. Walker: | I told you there is no estate. |

| Ms. Hackett: | Right, ma'am, but a home is considered a -- as an estate, a property.  That's considered -- it was a disputed -- it was his asset.  It's basically considered an asset. |
| Ms. Walker: | It's not his asset. |
| Ms. Hackett: | Okay, ma'am.  All right.  Thank you.  I'll call you at a later date. |

(Exhibit B, pp. 184-90; Exhibit C).

44.    Phillips & Cohen did not contact Ms. Walker again after the November 17, 2008 telephone call.  (Exhibit B, p. 127).

45.    Ms. Walker has admitted her allegations in this lawsuit are solely related to the telephone call which occurred on November 17, 2008.  (Exhibit B, p. 104; Exhibit C)

## II.    ARGUMENT

### A.    Plaintiff's FDCPA claims must be dismissed, as Plaintiff admits she has no evidence the subject debt was incurred for personal, family, or household purposes.

The threshold requirement for application of the FDCPA is the existence of a "debt" as that term is contemplated by the FDCPA.  *See Cook v. Hamrick*, 278 F. Supp. 2d 1202, 1204 (D. Col. 2003) (citation omitted).   The FDCPA specifically defines a "debt" as "[a]ny obligation or alleged obligation *of a consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes … ."*  15 U.S.C. § 1692a(5) (emphasis added).  Under this

definition, courts have held "the use of the proceeds by the borrow is paramount" and "the motive or intent of the lender is irrelevant." *See Bloom v. I.C. System, Inc.*, 753 F. Supp. 314, 317 (D. Or. 1990).

The Eleventh Circuit Court of Appeals has held the plain terms of the FDCPA show that "not all obligations to pay are considered 'debts' subject to the FDCPA." *See Hawthorne v. Mac Adjustment, Inc.*, 140 F. 3d 1367, 1371 (11th Cir. 1998) (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F. 3d 1322, 1324 (7th Cir. 1997)). In this regard, courts have repeatedly held a plaintiff must "proffer evidence such that a reasonable jury could find … [a] debt arose primarily for personal, family, or household purposes." *See Voris v. Creditors Alliance, Inc.*, 2007 U.S. Dist. LEXIS 87413, *17 (N.D. Ill. 2007); *see also Whittiker v. Deutsche Bank National Trust Co.*, 2009 U.S. Dist. LEXIS 21289, *33 (N.D. Ohio 2009) (finding plaintiff's failure to proffer evidence that debt was incurred for personal, family, or household purposes to be fatal to plaintiff's FDCPA claim); *see also Kafele v. Shapiro & Felty, L.L.P.*, 2006 U.S. Dist. LEXIS 13155 (S.D. Ohio 2006) (finding plaintiff's FDCPA claim failed as a matter of law because plaintiff did not come forward with evidence that the subject debt was incurred for personal, family, or household purposes); *see also Beaton v. Reynolds, Ridings, Vogt & Morgan, P.L.L.C.*, 986 F. Supp. 1360 (W.D. Okla. 1998) (granting defendant's motion for summary judgment where "[p]laintiff … failed to satisfy

her burden to show a triable issue of fact as to whether [the debt] was a 'debt' subject to the Act")

Not only has Plaintiff failed to proffer such evidence, Plaintiff has expressly admitted she does not know how Mr. Knighten expended the funds which created the debt owed to HSBC Bank.  (Exhibit B, p. 150).  In fact, Plaintiff has suggested it is possible Mr. Knighten expended the subject funds in operating his independent mechanic business or to purchase drugs.  (Exhibit B, p. 149-51).  Courts have held debts incurred for business purposes, rather than personal, family, or household purposes, are not subject to the FDCPA.  *See Bloom*, 753 F. Supp. 314 (finding debt incurred for venture capital investment in software company not subject to the FDCPA); *see also Zsamba v. Community Bank, Abilene, Kansas*, 63 F. Supp. 2d 1294 (D. Kan. 1999) (finding underlying debt incurred for "business expenses" not subject to the FDCPA); *see also Holman v. West Valley Collection Services, Inc.*, 60 F. Supp. 2d 935 (D. Minn. 1999) (finding bill for "business device" not subject to the FDCPA).  Counsel for Phillips & Cohen has also located no case law which would recognize a claim under the FDCPA for a debt incurred while engaging in an illegal activity.

Simply, Plaintiff has admitted she cannot provide evidence the subject debt was incurred for personal, family, or household purposes.  Pursuant to the

applicable case law precedent and the relevant statutory language, Plaintiff's FDCPA claims must be dismissed as a matter of law.

**B.     Plaintiff's invasion of privacy claim is due to be dismissed, as the communication at issue clearly did not exceed the bounds of reasonableness.**

For those cases which do not involve a public or commercial use or publication, Alabama courts have recognized the tort of invasion of privacy only where "there has been an intrusion upon the plaintiff's solitude or seclusion, or a wrongful intrusion into one's private activities in such manner so as to **<u>outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities</u>**." *I.C.U. Investigations, Inc. v. Jones*, 780 So. 2d 685, 689 (Ala. 2000) (citations omitted and emphasis added).  The Alabama Supreme Court in *Norris v. Moskin Stores, Inc.* noted "[t]he mere effort of a creditor, … to collect a debt cannot without more be considered a wrongful and actionable intrusion, … [as a] creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt."  132 So. 2d 321, 323 (1961).

In the analogous case of *Windsor v. General Motors Acceptance Corp.*, the Alabama Supreme Court dismissed an invasion of privacy claim with allegations which are far more egregious than the conduct at issue in this matter.  323 So. 2d 350, 351 (Ala. 1975).  In *Windsor*, a creditor contacted a debtor, either in person or by telephone, approximately 15-20 times concerning her delinquent payments.  *Id.*

15

The creditor spoke to the debtor's mother (with whom the debtor lived) several times, and would come to the house even after the mother informed the creditor that the debtor was not at home. *Id.* The creditor was condescending to the debtor's mother and "would talk down to her" to the point where after the creditor called the debtor's mother "just went crazy" and "like to have died." *Id.* at 352. Ultimately, as a result of the creditor's contacts, the debtor's mother "went to the hospital and stayed there." *Id.* Despite the creditor's conduct, the *Windsor* court found no error in the trial court's granting of a directed verdict in the defendant's favor as to the mother's invasion of privacy claim. *Id.*

In the instant matter, Plaintiff was contacted by Phillips & Cohen on one (1) occasion, consisting of a five (5) minute telephone call. Plaintiff admits Phillips & Cohen's collector never cursed her nor called her names during the telephone call. (Exhibit B, p. 130). Plaintiff's only allegations related to the telephone call are that Phillips & Cohen's collector informed her that she was responsible for paying Mr. Knighten's debt, she should pay the debt, and Phillips & Cohen was going to take her house away if the debt was not paid. (Exhibit B, pp. 141, 146, 173).[3]

Even taking Plaintiff's allegations at face value, which is not necessary in this case, the allegations do not rise to the level of an invasion of privacy under

---

[3] Perhaps understanding her allegations did not rise to the level of an invasion of privacy, Plaintiff added an allegation in her deposition that the telephone call was particularly upsetting because Phillips & Cohen's collector stated she worked for a law firm. (Exhibit B, pp. 171-72). As evidenced by the audio recording and the transcript, Ms. Hackett never advised Ms. Walker that she worked for a law firm. (Exhibit B, pp. 184-90; Exhibit C).

Alabama law.  With that said, the audio recording of the November 17, 2008 telephone call is definitive proof that Plaintiff has misrepresented the substance of the communication at issue.  Plaintiff was not advised she was responsible for the subject debt nor was she asked to pay the subject debt.  To the contrary, Phillips & Cohen's collector specifically informed Plaintiff she was "not legally responsible" for the subject debt.  (Exhibit B, p. 189-90).

Furthermore, Phillips & Cohen's collector made no threat to take away Plaintiff's home.  At most, the telephone call created brief confusion as to whether the deed to Plaintiff's home was a joint tenancy with a right of survivorship. Plaintiff admits she verified with the Probate Court immediately after the telephone call that the deed to the property was indeed a joint tenancy with a right of survivorship.[4]  The audio recording of the subject call does not reflect any doubt as to Plaintiff's understanding of the status of the deed for the property.  (Exhibit C).

In demonstrating the stark contrast in allegations for invasion of privacy claims, the Eleventh Circuit's recent ruling in *Baldwin v. Blue Cross/Blue Shield of Alabama* is instructive.  480 F. 3d 1287, 1308 (11th Cir. 2007).  In *Baldwin*, the plaintiff provided evidence that her supervisor routinely used sexually-laced profanity in the office, propositioned her to spend the night in his hotel room, often

---

[4] It should be noted that Plaintiff had already retained her attorney, Whitney Seals, at the time the November 17, 2008 telephone call was made.  (Exhibit B, p. 156).  Plaintiff testified she also called Mr. Seals immediately after the November 17, 2008 telephone call.  (Exhibit B, p. 134).

called her "babe," closed the door to his office and asked her to perform oral sex on him, walked behind her and breathed on her neck, and unzipped his fly in her presence. *Id.* Notwithstanding the egregious misconduct, the Eleventh Circuit found no genuine issue of material fact as to the invasion of privacy claim. The Court explained: "Assuming that [the supervisor] did everything that [the plaintiff] said he did, his harassment of [the plaintiff] was not sufficiently outrageous as a matter of Alabama law" to sustain a claim for invasion of privacy. *Id.*

Without question, the conduct of Phillips & Cohen's collector in this case was mild in comparison to even those cases in which Alabama courts have *denied* claims for invasion of privacy. The single communication at issue does not approach those limited circumstances which outrage or cause a person of ordinary sensibilities mental suffering, shame, or humiliation. As the November 17, 2008 communication with Plaintiff clearly did not exceed the bounds of reasonableness, Plaintiff's invasion of privacy claim is due to be dismissed.

**C.     As Plaintiff cannot sustain an underlying tort, Plaintiff's negligent, reckless, and wanton training and supervision claims are due to be dismissed as a matter of law.**

In *Stevenson v. Precision Std., Inc.*, the Alabama Supreme Court noted that "in *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993), this Court recognized a cause of action for negligent or wanton supervision and training." 762 So. 2d 820,

824 (Ala. 1999).  "This cause of action, however, was predicated on the underlying tortious conduct of an employee."  *Id.*

In *Thrasher v. Ivan Leonard Chevrolet*, this Court made clear that "[i]n order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort."  195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002) (citations omitted).[5]  Simply, if this Court finds Plaintiff's invasion of privacy claim is due to be dismissed, Plaintiff's claims against Phillips & Cohen for negligent, reckless, and wanton training and supervision are also due to be dismissed as a matter of law.

**WHEREFORE, PREMISES CONSIDERED,** Phillips & Cohen respectfully requests this Honorable Court grant its motion for summary judgment to dismiss the claims asserted by Plaintiff, as set forth in the Movant's Motion for Summary Judgment.  Phillips & Cohen also asks this Court to make its Order final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.[6]

---

[5] The United States District Courts for the Middle and Southern Districts of Alabama have also held a plaintiff's negligent and/or wanton hiring, training, and supervision claims are due to be dismissed where a plaintiff has failed to establish their underlying tort claims.  *Lambert v. The Independent Life & Accident Ins. Co.*, 994 F. Supp. 1385, 1394 (M.D. Ala. 1998); *Watson v. McRae's Inc.*, 2001 U.S. Dist. LEXIS 7257, *46 (S.D. Ala. 2001)

[6] Given that Plaintiff has asserted identical claims and allegations in this lawsuit against Phillips & Cohen's former employee Char'reece Hackett (who is proceeding in this matter *pro se*), Phillips & Cohen requests this Court also dismiss Plaintiff's claims against Ms. Hackett for the reasons set forth above.

Respectfully submitted,

*/s/Laura C. Nettles*
Laura C. Nettles (ASB-5805-S63L)
Dustin J. Kittle (ASB-8250-T68K)
Attorneys for Defendant,
Phillips & Cohen Associates, Ltd.

**OF COUNSEL:**

**LLOYD, GRAY & WHITEHEAD, P.C.**
2501 20th Place South, Suite 300
Birmingham, Alabama 35223
(205) 967-8822 - Telephone
(205) 967-2380 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document to all attorneys of record by electronically filing the foregoing document with the United States District Court, Northern District of Alabama on this the **9<u>th</u>** day of **<u>July</u>**, **<u>2009</u>**:

W. Whitney Seals, Esq.
Pate & Cochrun, LLP
P. O. Box 10448
Birmingham, Alabama 35202-0448

Michael W. Lindsey, Esq.
Lindsey Law Firm, LLC
One Perimeter Park Drive, Suite 330 N
Birmingham, Alabama 35243

John C. Hubbard, Esq.
Lindsey Law Firm, LLC
One Perimeter Park Drive, Suite 330 N
Birmingham, Alabama 35243
*Attorneys for Plaintiff*

and I hereby certify that I have mailed a copy of the foregoing document by U.S. Mail, properly addressed, and postage prepaid to:

Ms. Char'reece Hackett
6 South Bancroft Parkway
Wilmington, Delaware 19805

*/s/Laura C. Nettles*
OF COUNSEL

21